UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>ANY AND ALL RADIO STATION TRANSMISSION EQUIPMENT, RADIO FREQUENCY POWER AMPLIFIERS, RADIO FREQUENCY TEST EQUIPMENT AND ANY OTHER EQUIPMENT ASSOCIATED WITH OR USED IN CONNECTION WITH THE TRANSMISSIONS ON FREQUENCY 101.3, 100.3, AND 105.3 MEGAHERTZ LOCATED AT 612-614 BLUE HILL AVENUE, UNIT 614C, DORCHESTER, MASSACHUSETTS, AND 616-624 BLUE HILL AVENUE, DORCHESTER, MASSACHUSETTS,<br><br>Defendants. | **FILED UNDER SEAL**<br><br>Civil Action No. |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, United States of America, by its attorney Andrew E. Lelling, United States Attorney for the District of Massachusetts, David G. Lazarus, Assistant United States Attorney, of counsel, alleges upon information and belief as follows:

### PRELIMINARY STATEMENT

1. Plaintiff brings this action in rem, pursuant to 47 U.S.C. § 510, to forfeit and condemn to the use of the United States any and all radio station transmission equipment, radio

frequency power amplifiers, radio frequency test equipment, and any other equipment associated with, or used in connection with, any radio transmission on the frequencies 101.3, 100.3, and 105.3 Megahertz ("MHz") from (a) the roof of 616-624 Blue Hill Avenue, Dorchester, Massachusetts, and (b) the roof and Unit 614C of 612-614 Blue Hill Avenue, Dorchester, Massachusetts (the "Defendant Radio Station Equipment").

2. Based upon the training, expertise, and experience of Federal Communications Commission ("FCC") agents, as well as specific observations of such equipment used in association with transmissions on the frequencies 101.3, 100.3, and 105.3 MHz, the Defendant Radio Station Equipment includes, without limitation, FM antenna(e); coaxial cable(s); transmitter(s); FM exciter(s); equalizer(s); amplifier(s); mixer(s); radio console(s); FM tuner(s); audio cable(s) and connector(s); microphone(s); audio monitor(s); video monitor(s); desktop and/or laptop computer(s); audio playback components, such as equipment to play audio tapes, compact disks, and long playing ("LP") records; headphone(s); telephone system(s); network router(s); and uninterruptable power supply(ies).

3. The Defendant Radio Station Equipment is being, or was, used in violation of 47 U.S.C. § 301 and is subject to forfeiture to the United States pursuant to 47 U.S.C. § 510 and 28 U.S.C. § 2461.

## JURISDICTION

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

5. Venue lies in the District of Massachusetts pursuant to 28 U.S.C. §§ 1355(b)(1)(A) and 1395(b), as the Defendant Radio Station Equipment is located within the

District of Massachusetts, and the acts and omissions giving rise to the forfeiture occurred in the District of Massachusetts.

## STATUTORY BACKGROUND

6. The FCC is an independent federal regulatory agency created by Congress to regulate interstate, intrastate, and foreign radio communications pursuant to the Communications Act of 1934, as amended (the "Act"), 47 U.S.C. §§ 151, et seq. The FCC is responsible for ensuring that no person transmits radio signals within the territorial boundaries of the United States without an FCC license or other prior FCC authorization.

7. Section 301 of the Act prohibits the operation of "any apparatus for the transmission of energy or communications or signals by radio (a) from one place in [the United States] to another place in the [United States]," except under, and in accordance with, the Act and with a license for that purpose granted under the provisions of the Act. 47 U.S.C. § 301.

8. The only exceptions to this licensing requirement are for Federal government operators, certain services that are "licensed by rule" pursuant to Section 307(e) of the Act, and certain non-licensed low-power radio transmitters operating at a power level that complies with Section 15.239(b) of Title 47 of the Code of Federal Regulations (the "FCC Rules"). Section 15.239(b) of the FCC Rules limits such non-licensed, low power radio transmitters to a field strength of 250 microvolts per meter ($\mu$V/m) at a distance of three meters from the transmitting antenna. 47 C.F.R. § 15.239(b).

9. Pursuant to Section 510 of the Act, "[a]ny electronic, electromagnetic, radio frequency, or similar device, or component thereof, used . . . with willful and knowing intent to violate [S]ection 301 . . . may be seized and forfeited to the United States." 47 U.S.C. §510.

10.     Section 312(f)(1) of the Act, which applies to violations for which forfeitures are assessed under section 510, provides that "[t]he term 'willful,' when used with reference to the commission or omission of any act, means the conscious and deliberate commission or omission of such act, irrespective of any intent to violate any provision of this Act or any rule or regulation of the Commission authorized by this Act." 47 U.S.C. § 312(f)(1). Section 312(f)(2) of the Act, which also applies to violations for which forfeitures are assessed under section 510, provides that "[t]he term 'repeated,' when used with reference to the commission or omission of any act, means the commission or omission of such act more than once, or, if such commission or omission is continuous, for more than one day." 47 U.S.C. § 312(f)(2).

## STATEMENT OF FACTS

11.     On June 25, 2007, the FCC received a complaint from a licensed broadcast station serving the Boston radio market. In the complaint, the station alleged that it was receiving harmful interference from an unlicensed station operating on 101.3 MHz in or near Dorchester, Massachusetts.

12.     On July 11, 2007, two FCC agents investigated the allegations in the complaint and, using a mobile direction-finding vehicle (an "MDFX"), determined that a radio station was operating on 101.3 MHz and that the source of the broadcast was located at 616-624 Blue Hill Avenue, Dorchester, Massachusetts (the "Antenna Location").

13.     Upon locating the source of the transmissions on 101.3 MHz, the FCC agents measured the strength of the station's signal at a distance of 51 meters from the source of the transmission and determined, based on their experience, that the measured field strength, when extrapolated to three meters, far exceeded the permissible level for a non-licensed low power radio transmitter under Section 15.239(b) of the FCC Rules.

14. The FCC agents then searched the FCC's license database and confirmed that the FCC had not issued a license to operate a radio station on 101.3 MHz at or near the Antenna Location.

15. On July 12, 2007, the FCC agents again observed a signal on 101.3 MHz in Boston, MA and, using an MDFX, identified the Antenna Location as the source of the signal. The FCC agents then entered one of the businesses in the Antenna Location and spoke with the building owner. The building owner stated that (a) he did not have access to the room where the transmitter was located and (b) Richard Clouden ("Clouden") operated the station. The FCC agents then spoke to Clouden at his place of work, Technique Collision, located at 10 Old Road, Boston, Massachusetts. Clouden admitted to the FCC agents that he owned the station and operated the station on 101.3 MHz from the Antenna Location. When the FCC agents asked to conduct a station inspection, Clouden stated that he did not have access to the site at the time. Clouden also informed the FCC agents that the station's studio was located at 11 Humphreys Street, which the FCC agents later determined was located in Roxbury, Massachusetts.

16. On July 26, 2007, the Boston Office issued a Notice of Unlicensed Operation ("First NOUO") to Clouden for the unlicensed operation observed on July 11, 2007. The First NOUO advised, among other things, that the operation of the unlicensed radio station on 101.3 MHz violated Section 301 of the Act and instructed the operator to immediately cease unlicensed operation of the station. The First NOUO also outlined the potential penalties for such violation, including the seizure of equipment, fines, and imprisonment and provided that Clouden had ten days to respond. The First NOUO was sent via certified mail and regular mail to Mr. Clouden's residence. The FCC did not receive a response to the First NOUO.

17. On August 15, 2007, two FCC agents observed a signal on 101.3 MHz in Boston, and, using an MDFX, identified the source of the signal as the Antenna Location.

18. Upon locating the source of the transmissions on 101.3 MHz, the FCC agents measured the strength of the station's signal at a distance of 45 meters from the source of the transmission and determined, based on their experience, that the measured field strength, when extrapolated to three meters, far exceeded the permissible level for a non-licensed low power radio transmitter under Section 15.239(b) of the FCC Rules.

19. The FCC agents then searched the FCC's license database and confirmed that the FCC had not issued a license to operate a radio station on 101.3 MHz at or near the Antenna Location.

20. On March 11, 2008, two FCC agents again observed a signal on 101.3 MHz in Boston and, using an MDFX, identified the source of the signal as the same transmitter site located at the Antenna Location. Upon locating the source of the transmissions on 101.3 MHz, the FCC agents measured the strength of the station's signal at a distance of 85 meters from the source of the transmission and determined, based on their experience, that the measured field strength, when extrapolated to three meters, far exceeded the permissible level for a non-licensed low power radio transmitter under Section 15.239(b) of the FCC Rules.

21. After taking the field strength measurements, the FCC agents proceeded to Clouden's place of work, Technique Collision. Clouden again admitted to operating the station and stated that the station's transmitter is located on top of the Antenna Location. When the FCC agents asked to inspect the site, Clouden again stated that he did not have access to the site at the time.

22. On March 17, 2008, two FCC agents returned to Clouden's place of work and asked to conduct an inspection of the station's studio, which Clouden previously had indicated was located at 11 Humphreys Street. The FCC agents followed Clouden by car to 11 Humphreys Street, Suite 3 and conducted an inspection of the station's studio equipment. During the inspection, Mr. Clouden again admitted to operating the station on 101.3 MHz.

23. On April 8, 2008, the District Director of the FCC Enforcement Bureau's Boston Field Office issued a Notice of Apparent Liability for Forfeiture ("NAL") against Clouden for operating an unlicensed radio broadcast station on 101.3 MHz at 616 Blue Hill Avenue, in apparent violation of Section 301 of the Act. The NAL proposed a monetary forfeiture of $10,000 and provided Mr. Clouden with 30 days to submit a response.

24. Clouden did not respond to the NAL and, accordingly, on June 26, 2008, the Acting Regional Director for the FCC Enforcement Bureau's Northeastern Region (which encompassed Massachusetts) issued a Forfeiture Order imposing the $10,000 monetary forfeiture against Clouden.

25. Clouden neither complied with, nor contested, the Forfeiture Order. In May 2009, the FCC referred the forfeiture to the United States Attorney's Office for the District of Massachusetts to bring an enforcement action to recover the forfeiture penalty, pursuant to 47 U.S.C.§ 504(a). On August 17, 2009, Plaintiff initiated an action against Clouden, and, on December 15, 2009, the court entered a default judgment against Clouden for $10,000. After unsuccessful attempts to collect the default judgment, in 2013, the Plaintiff referred the default judgment to the United States Department of the Treasury's Treasury Offset Program.

26. In early 2014, the FCC received an anonymous voicemail complaining of unlicensed radio stations operating in Boston, Massachusetts. The voicemail included a reference to a station operating on 101.3 MHz.

27. On June 19, 2014, three FCC agents investigated the complaint and, using an MDFX, determined that the source of the signal on 101.3 MHz was located at the Antenna Location. After gaining access to the building's roof, the FCC agents observed an FM broadcast antenna and connected coaxial cable that traversed the roof, crossed over to the roof of the adjacent building at 612-614 Blue Hill Avenue, Dorchester, Massachusetts, and entered through a hole in the roof near the northeast wall of the building. The FCC agents then went into 612-614 Blue Hill Avenue and identified Unit 614C (the "Transmitter Location") as being directly below the hole in the roof where the station's coaxial cable entered the building. The FCC agents then conducted a public records search of Arsis Media Group, the entity occupying the Transmitter Location and determined that Clouden was affiliated with the company.

28. On July 2, 2014, two FCC agents returned to Dorchester, Massachusetts to continue their investigation of the station operating on 101.3 MHz. After using an MDFX to determine that the station was still operating from the Antenna Location, the FCC agents measured the strength of the station's signal at a distance of 160 meters from the source of the transmission and determined that the field strength, when extrapolated to three meters, was 5,300,604 µV/m, or 21,202 times the permissible level for a non-licensed low power radio transmitter under Section 15.239(b) of the FCC Rules.

29. The FCC agents then issued a Notice of Unlicensed Radio Operation ("Second NOUO"), dated July 2, 2014, to Clouden/Arsis Media Group. The FCC agents posted the Second NOUO on the door to the Transmitter Location and on the main entrance to the building

at 612-614 Blue Hill Avenue. Like the First NOUO, the Second NOUO advised, among other things, that the operation of the unlicensed radio station on 101.3 MHz violated Section 301 of the Act and instructed the recipient to immediately cease unlicensed operation of the station. The Second NOUO also outlined the potential penalties for such violation, including the seizure of equipment, fines, and imprisonment and provided that Clounden and Arsis Media Group had ten days to respond.

30. On July 3, 2014, a person identifying himself as David Martin ("Martin") from "Big City Radio," called the FCC in response to the Second NOUO. During the call, Martin stated to an FCC agent that the station's studio was located at the Transmitter Location and that Clouden owned the station. FCC agents warned Martin over the phone that if the station continued to operate without a license from the FCC, the station could be subject to a fine and the station's equipment could be seized.

31. On May 12, 2016, the FCC received a complaint from the Massachusetts Broadcasters Association, alleging that an unlicensed radio station was operating in or near Boston, Massachusetts, on 101.3 MHz under the name "Big City."

32. On February 14, 2017, an FCC agent investigated the complaint and, using an MDFX, observed the complained-of station operating on 101.3 MHz from the Antenna Location. The FCC agent observed four FM broadcast antennas mounted to the roof of the Antenna Location. At the time, the FCC agent was unable to gain access to the building to determine which of the four antennas was associated with the transmissions on 101.3 MHz. The FCC agent made a recording of the station's audio broadcast, during which an announcer identified the station as "Big City."

33. After using the MDFX to confirm that the unauthorized station was operating on 101.3 MHz, the FCC agent measured the strength of the station's signal at a distance of 195 meters from the source of the transmission and determined that the field strength, when extrapolated to three meters, was 3,095,519 µV/m, or 12,382 times the permissible level for a non-licensed low power radio transmitter under Section 15.239(b) of the FCC Rules.

34. The FCC agent then returned to the Antenna Location and spoke to the property manager, Jerome Frazier ("Frazier"). After explaining that a radio station appeared to be operating from the Antenna Location without an authorization, the FCC agent issued a Notice of Unlicensed Radio Operation ("Third NOUO"), to the "Landlord/Radio Operator (Jerome Frazier)." The FCC agent left the Third NOUO with Frazier. Like the prior NOUOs, the Third NOUO advised, among other things, that the operation of the unlicensed radio station on 101.3 MHz violated Section 301 of the Act and instructed the operator to immediately cease unlicensed operation of the station. The Third NOUO also outlined the potential penalties for such violation, including the seizure of equipment, fines, and imprisonment, and provided that the recipient had ten days to respond.

35. On February 21, 2017, an FCC agent searched the FCC's license database and confirmed that the FCC had not issued a license to operate a radio station on 101.3 MHz at or near the Antenna Location.

36. On April 28, 2017, the FCC received a complaint filed by a Cambridge, Massachusetts, resident alleging that three separate, unauthorized FM broadcast stations were operating at or near 614 Blue Hill Avenue, Dorchester, Massachusetts, including one station operating on 101.3 MHz.

37. On May 4, 2017, three FCC agents began to investigate the April 28, 2017, complaint and, using an MDFX, determined that each of the three complained-of stations was operating from the Antenna Location. The FCC agents observed four FM broadcast antennas mounted to the roof of the Antenna Location. At the time, the FCC agents were unable to gain access to the building to determine which of the four antennas was associated with the transmissions on 101.3 MHz. The FCC agents observed on Ellington Street an entrance to a gated alley that appeared to lead into the Antenna Location. A sign on the gate indicated that the wireless carrier AT&T operated a cellular base station from the roof of the Antenna Location.

38. After using the MDFX to confirm that the unauthorized station was operating on 101.3 MHz, the FCC agents measured the strength of the station's signal at a distance of 232 meters from the source of the transmission and determined that the field strength, when extrapolated to three meters, was 3,648,778 µV/m, or 14,595 times the permissible level for a non-licensed low power radio transmitter under Section 15.239(b) of the FCC Rules.

39. The FCC agents then returned to the Antenna Location, where they spoke with the employee of a business located in 616-624 Blue Hill Avenue. The employee identified Frazier as the property manager of the Antenna Location. The FCC agents then issued a Notice of Unlicensed Radio Operation ("Fourth NOUO"), dated May 4, 2017, to the "Landlord/Radio Operator" at the Antenna Location. The FCC agents left the Fourth NOUO with the employee they were speaking to, who stated that he would deliver the document to Frazier. Like the prior NOUOs, the Fourth NOUO advised, among other things, that the operation of the unlicensed radio station on 101.3 MHz violated Section 301 of the Act and instructed the operator to immediately cease unlicensed operation of the station. The Fourth NOUO also outlined the

potential penalties for such violation, including the seizure of equipment, fines, and imprisonment and provided that the recipient had ten days to respond.

40. On May 10, 2017, an FCC agent conducted an FCC database search and confirmed that the FCC had not authorized a broadcast station to operate on 101.3 MHz at or near the Antenna Location.

41. On June 8, 2017, an FCC agent performed an Internet search for references to a radio station named "Big City" in and around Boston, Massachusetts. Through the Internet searches, the FCC agent discovered the website www.bigcityfm.com. In reviewing the station's website, the FCC agent determined that Tayla Andre Lantz ("Lantz") had a regularly-scheduled program on the station. The FCC agent then corroborated the information on www.bigcity.net with Lantz's personal website, www.taylaandre.com., which identified her as "Taylor Andre of Big City 101.3FM 'Wake Up With Taylor Andre.'" Because ww.bigcityfm.com did not identify Clouden as the station's owner or operator, the FCC agent did not immediately connect the current investigation with the FCC's prior enforcement action against Clouden for operating an unlicensed station on the same frequency and at the same location in 2007.

42. On July 13, 2017, the FCC Enforcement Bureau's Columbia Regional Office (the "Columbia Office") issued a Notice of Unlicensed Operation (the "Fifth NOUO") to Lantz. Like the prior NOUOs, the Fifth NOUO advised, among other things, that the operation of the unlicensed radio station on 101.3 MHz violated Section 301 of the Act and instructed Lantz to immediately cease unlicensed operation of the station. The Fifth NOUO also outlined the potential penalties for such violation, including the seizure of equipment, fines, and imprisonment and provided that Ms. Lantz had ten days to respond.

43. The Columbia Office sent the Fifth NOUO to the Transmitter Location and Ms. Lantz's residence by First Class Mail and United Parcel Service ("UPS") overnight delivery. On July 21, 2017, UPS returned the copy of the Fifth NOUO sent to the Transmitter Location with a label indicating that the recipient "did not want, refused delivery" and identifying Ms. Lantz as the "original recipient." On July 25, 2017, UPS returned the copy of the Fifth NOUO sent to Ms. Lantz's residence with the same indication. Neither copy of the Fifth NOUO sent by First Class Mail was returned to the FCC.

44. On July 31, 2017, Ms. Lantz sent an email to the FCC after the release of a news article describing the Fifth NOUO that had been issued to Ms. Lantz. In her email to the FCC, Ms. Lantz indicated that she had not received a copy of the Fifth NOUO. On August 3, 2017, the Regional Director for the FCC Enforcement Bureau's Region One (which included Massachusetts) replied by email to Ms. Lantz's email and provided her with another copy of the Fifth NOUO.

45. On August 4, 2017, an FCC agent contacted Ms. Lantz by telephone to confirm receipt of the Regional Director's email. On the call, Ms. Lantz acknowledged receipt of the Regional Director's email and stated that she was no longer affiliated with the station operating on 101.3 MHz.

46. On August 14, 2017, two FCC agents returned to the Antenna Location and observed that a station continued to operate on 101.3 MHz. Using an MDFX, the FCC agents determined that the source of the station's signal was the Antenna Location. The FCC agents observed the same four FM broadcast antennas mounted to the roof of the Antenna Location as FCC agents observed on prior inspections. The FCC agents monitored the station's broadcast stream on 101.3 MHz and heard the announcer identify the station as "Big City."

47. After using the MDFX to confirm that the station was operating on 101.3 MHz, the FCC agents measured the strength of the station's signal at a distance of 202 meters from the source of the transmission and determined that the field strength, when extrapolated to three meters, was 3,999,925 µV/m, or 15,997 times the permissible level for a non-licensed low power radio transmitter under Section 15.239(b) of the FCC Rules.

48. On August 15, 2017, while travelling to the Antenna Location to continue their investigation, two FCC agents monitored the transmissions on 101.3 MHz and observed that it abruptly ceased transmitting. Upon arriving at the Antenna Location, the two FCC agents contacted the AT&T Network Operations Center and were granted access to AT&T's leased premises on the roof of the Antenna Location. The two FCC agents observed four similar FM broadcast antennas on the roof of the Antenna Location. The FCC agents found that the coaxial cable connected to one of the antennas had been severed, thereby rendering the antenna inoperable. The FCC agents used a spectrum analyzer to determine the frequency of the emissions emanating from two active antennas (both of which were being used by other, unrelated unauthorized radio stations) and found that neither was operating on 101.3 MHz. The FCC agents concluded that the fourth antenna, which was inactive and mounted on the eastern side of the north-facing wall of the highest roof at the Blue Hill Location (the "Big City Antenna"), had been used to operate on 101.3 MHz. The FCC agents then observed that the Big City Antenna and its coaxial cable were in the same configuration as observed on June 19, 2014: the coaxial cable traversed the roofs of the Antenna Location and the neighboring building at 612-614 Blue Hill Avenue before entering the latter building through a hole in the roof.

49. The two FCC agents then followed two people entering the building at 612-614 Blue Hill Avenue. The FCC agents interviewed the tenant in Unit 614A, which is located next to

14

Unit 614C (the Transmitter Location). The business proprietor stated that a radio station operated from within the Transmitter Location.

50. On August 16, 2017, two FCC agents spoke with another tenant of 612-614 Blue Hill Avenue, who referred the FCC agents to the building's owner, Steve Papantoniadis ("Papantoniadis"). The tenant indicated that Papantoniadis owned and worked in a restaurant also located in 612-614 Blue Hill Avenue.

51. On August 17, 2017, two FCC agents interviewed Papantoniadis. He acknowledged that he was the owner of the building at 612-614 Blue Hill Avenue, and stated that Unit 614C (the Transmitter Location) was leased to Clouden and that Clouden operated the "Big City" radio station from within the unit. At the time, Papantoniadis declined to provide the FCC agents with access to the Transmitter Location, stating that he had a poor relationship with Mr. Clouden.

52. On August 24, 2017, the FCC received a complaint from a private citizen indicating that the "Big City" radio station had changed its operating frequency.

53. On September 6, 2017, the lead FCC agent investigating the "Big City" radio station was made aware of complaints filed in August 2017 by four Boston-area residents, each of whom complained that a station operating on 101.3 MHz was causing harmful interference to a licensed FM translator station, W267CE, which was lawfully rebroadcasting the signal of WJIB(AM) on 101.3 MHz.

54. On September 11, 2017, the Columbia Office issued Notices of Unlicensed Operation to Clouden and Lantz (together, the "Sixth NOUO") relating to the violations observed on August 14, 2017. Like the prior five NOUOs, the Sixth NOUO advised, among other things, that the operation of the unlicensed radio station on 101.3 MHz violated Section

301 of the Act and instructed Clouden and Lantz to immediately cease unlicensed operation of the station. The Sixth NOUO also outlined the potential penalties for such violation, including the seizure of equipment, fines, and imprisonment and provided that Clouden and Lantz had ten days to respond.

55. The Columbia Office sent the Sixth NOUO by First Class Mail and UPS overnight delivery to Clouden and Lantz at the Transmitter Location and to Lantz at her residence. A search of the UPS online tracking system indicates that UPS delivered the copies of the Sixth NOUO sent to the Transmitter Location on September 14, 2017 and the copy sent to Lantz's residence on September 15, 2017. To date, the FCC has not received a response to the Sixth NOUO from either Clouden or Lantz.

56. On September 12, 2017, based on the complaint received on August 24, 2017, (para. 52, supra) indicating that the station known as "Big City" had moved to 100.3 MHz, an FCC agent returned to the Antenna Location to investigate. Using an MDFX, the FCC agent confirmed that the station previously observed operating at the Antenna Location was no longer operating on 101.3 MHz but had moved to 100.3 MHz. From street level, the FCC agent observed that FM broadcast antennas continued to be mounted to the roof of the Antenna Location. The FCC agent also made an audio recording of the broadcasts on 100.3 MHz, during which an announcer identified the station as "Big City."

57. After confirming that a station was operating on 100.3 MHz from the Antenna Location, the FCC agent measured the strength of the station's signal at a distance of 202 meters from the source of the transmission and determined that the field strength, when extrapolated to three meters, was 4,174,553 $\mu V/m$, or 16,698 times the permissible level for a non-licensed low power radio transmitter under Section 15.239(b) of the FCC Rules.

58. On September 21, 2017, two FCC agents continued their investigation and, using an MDFX, confirmed that a station continued to operate on 100.3 MHz from the Antenna Location. The FCC agents monitored the station's broadcast, during which they heard (a) an announcer identify the station as "Big City," and (b) a campaign advertisement for a candidate in Boston's mayoral election.

59. After confirming that a station was operating on 100.3 MHz from the Antenna Location, the FCC agents measured the strength of the station's signal at a distance of 190 meters from the source of the transmission and determined that the field strength, when extrapolated to three meters, was 4,417,659 $\mu$V/m, or 17,671 times the permissible level for a non-licensed low power radio transmitter under Section 15.239(b) of the FCC Rules.

60. On October 13, 2017, an FCC agent searched the FCC's license database and confirmed that the FCC had not issued a license to operate a radio station on 100.3 MHz at or near the Antenna Location. The FCC agent also viewed Ms. Lantz's personal website (www.taylaandre.com), and observed that, notwithstanding her representations to an FCC agent on August 4, 2017 (para. 45, supra) Ms. Lantz still promoted her affiliation with Big City Radio on her website.

61. On January 30, 2018, an FCC agent returned to the Antenna Location and, using an MDFX, determined that a station was transmitting identical content on 100.3 MHz and 105.3 MHz from that site.

62. On February 1, 2018, counsel to the licensee of a radio station operating in Boston reported to the FCC that the "Big City" radio station had ceased operating on 100.3 MHz and was only operating on 105.3 MHz.

63. On March 1, 2018, an FCC agent searched the FCC's license database and confirmed that the FCC had not issued a license to operate a radio station on 105.3 MHz at or near the Antenna Location.

64. As set forth above, unlicensed broadcasting is permitted on 101.3 MHz, 100.3, and 105.3 MHz only if the field strength of the transmissions does not exceed 250 µV/m at three meters from the transmitting antenna.

65. As described above, the FCC agents investigated the source of the transmissions on 101.3 MHz, 100.3 MHz, and 105.3 MHz and, upon taking field strength measurements, determined that the field strength measurements, when extrapolated to three meters, far exceeded the level authorized for a non-licensed low-power radio transmitter under Section 15.239(b) of the FCC Rules.

66. Accordingly, a license issued by the FCC is required for the operation of this station on 101.3 MHz, 100.3 MHz, and/or 105.3 MHz from the Antenna Location and the Transmitter Location.

67. The FCC's records show, however, that no license has ever been issued for the operation of an FM broadcast station at or near the Antenna Location or the Transmitter Location.

68. The unlicensed radio station transmitting on 101.3 MHz, 100.3 MHz and 105.3 MHz is operating in violation of 47 U.S.C. § 301.

69. To date, no application to operate a licensed radio station has been filed with the FCC by Clouden or Lantz.

70. Thus, Clouden and Lantz are operating an unlicensed station in violation of 47 U.S.C. § 301.

71. Because the Defendant Radio Station Equipment is being used to operate an unlicensed broadcast radio station, seizure and forfeiture of the Defendant Radio Station Equipment is necessary to prevent continuing violations of the Act.

72. By this action, Plaintiff seeks to seize and forfeit the Defendant Radio Station Equipment, identified more specifically above in paragraph 2, located (a) on the roof of the Antenna Location, (b) on the roof of 612-614 Blue Hill Avenue, and (c) within Unit 614C of 612-614 Blue Hill Avenue. Plaintiff submits that there is probable cause to believe that the devices comprising the Defendant Radio Station Equipment may be found on the roof of the Antenna Location and the roof of 612-614 Blue Hill Avenue because FCC agents directly observed the Big City Antenna at those locations. Plaintiff submits that there is probable cause to believe that other devices comprising a portion of the Defendant Radio Station Equipment may be found within Unit 614C of 612-614 Blue Hill Avenue based upon (a) an interview with the owner of 612-614 Blue Hill Avenue and (b) the FCC agents' observation that the station's coaxial cable enters the building at 612-614 Blue Hill Avenue directly above Unit 614C.

## **CLAIM FOR RELIEF**

73. Plaintiff repeats and alleges each and every allegation set forth in paragraphs 1 through 72.

74. The Defendant Radio Station Equipment was used, and continues to be used, for illegal, unlicensed radio broadcast in violation of 47 U.S.C. § 301.

75. By reason of the foregoing, the Defendant Radio Station Equipment was, and continues to be, used and possessed with willful and knowing intent to violate 47 U.S.C. § 301, and is therefore subject to forfeiture to the United States under the provisions of 47 U.S.C. § 510.

**WHEREFORE**, Plaintiff, the United States of America, requests that a warrant of this Court be issued for the arrest of the Defendant Radio Station Equipment; that the Defendant

Radio Station Equipment be forfeited and condemned to the use of the United States; that Plaintiff be awarded its costs and disbursements in the action and for such other and further relief as this Court deems just and proper.

                              Respectfully submitted,

                              ANDREW E. LELLING,
                              United States Attorney,

By:    /s/ David G. Lazarus
        DAVID G. LAZARUS, B.B.O #624907
        Assistant United States Attorney
        United States Attorney's Office
        1 Courthouse Way, Suite 9200
        Boston, MA 02210
        (617) 748-3100

Dated:  March 5, 2018        David.Lazarus2@usdoj.gov